1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   JOSHUA J. CANTU,                        Case No. 1:09-cv-00177 DAD DLB PC

12            Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                             REGADING PARTIES' MOTIONS FOR
13       v.                                  SUMMARY JUDGMENT

14   M. GARCIA, et al.,                      (Documents 139, 146 and 149)

15            Defendants.

16

17        Plaintiff Joshua J. Cantu ("Plaintiff") is a former state prisoner proceeding pro se in this civil

18   rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on January 15, 2009, in

19   the Northern District of California, and it was transferred to this Court on January 26, 2009.  The

20   action is proceeding on Plaintiff's June 6, 2013, Second Amended Complaint for (1) an Eighth

21   Amendment excessive force claim against Defendant Garcia; and (2) an Eighth Amendment failure

22   to protect claim against Defendants Goree and Baptiste.[1]

23        Plaintiff filed a motion for summary judgment against Defendant Garcia on May 14, 2015.

24   He filed a separate motion for summary judgment against Defendant Baptiste on May 28, 2015.

25   Defendants filed objections to Plaintiff's evidence on June 15, 2015.[2]

26

27   _____
     [1]  Defendant Williams was dismissed on November 14, 2015, for failure to effectuate service.

28   [2]  Defendants incorrectly state that Plaintiff's May 28 motion superseded his May 14 motion.  As noted above, the
     motions were brought against two different Defendants.

                                              1

1    Defendants filed their own motion for summary judgment on June 15, 2015.  Although

2 Plaintiff did not oppose the motion, the Court will consider the evidence in both parties' motions in

3 this ruling.  No other briefing has been received, and the motions are therefore deemed submitted

4 pursuant to Local Rule 230(l).

5 **I.     LEGAL STANDARD**

6    Any party may move for summary judgment, and the Court shall grant summary judgment if

7 the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

8 to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual

9 Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is

10 disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record,

11 including but not limited to depositions, documents, declarations, or discovery; or (2) showing that

12 the materials cited do not establish the presence or absence of a genuine dispute or that the opposing

13 party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation

14 marks omitted).  The Court may consider other materials in the record not cited to by the parties, but

15 it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist.,

16 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017

17 (9th Cir. 2010).

18    Defendants do not bear the burden of proof at trial and in moving for summary judgment,

19 they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp.

20 Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S.

21 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to

22 Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re

23 Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to

24 "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty

25 Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

26    In judging the evidence at the summary judgment stage, the Court may not make credibility

27 determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

28 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light

2

1  most favorable to the nonmoving party and determine whether a genuine issue of material fact

2  precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>,

3  657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct.

4  1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's

5  filings must be liberally construed because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d

6  1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

7  **II.      <u>SUMMARY OF PLAINTIFF'S ALLEGATIONS</u>[3]**

8  On March 12, 2008, Plaintiff was transferred from Calipatria State Prison to Kern Valley

9  State Prison ("KVSP").  Plaintiff and the other inmates made numerous stops at other prisons along

10  the way.  Plaintiff was a Sensitive Needs inmate.

11  On March 13, 2008, on the way from Tehachapi State Prison to KVSP, while on the

12  transportation bus, Plaintiff heard someone shout "shut the fuck up, bitch," from the back of the bus.

13  ECF No. 91, at 3.  Plaintiff then heard Defendant Garcia yell, "it's probably those (SNY) inmates at

14  the front of the bus, fucking bitches."  ECF No. 91, at 3.

15  As the bus stopped at a prison to drop inmates off, Plaintiff, who was in the front of the bus,

16  had to disembark to allow inmates who were in the back of the bus to get off.  Plaintiff was exiting

17  the bus using the stairs at the front.  Defendant Garcia was standing by the exit area.

18  Defendant Garcia looked at Plaintiff and said, "what are you looking at, bitch?"  ECF No. 91,

19  at 4.  Defendant Garcia then grabbed Plaintiff by the neck and started to choke him.  He then asked

20  Plaintiff if he wanted a "piece" of him and dragged Plaintiff off the bus and slammed Plaintiff's head

21  into the front of the bus.  Defendant Garcia then choked Plaintiff and squeezed his neck tightly.

22  Plaintiff felt a shattering pain in his face from the impact, along with a sharp, stinging pain and crack

23  in his neck.  During the incident, Plaintiff was shackled in full restraints.  Defendant Garcia

24  continued to call Plaintiff names and threatened Plaintiff.  Plaintiff states that he does not know what

25  he did to cause Defendant Garcia to "snap."  ECF No. 91, at 4.  He was not talking or being

26  disruptive in any way.  Defendant Garcia eventually released Plaintiff and ordered him to go to the

27  back of the bus.

28

---

[3]  The Court will use citations that most accurately reflect the document.

1    Defendants Baptiste and Goree were present at the scene and watched the incident.

2  However, they failed to stop Defendant Garcia's attack.

3    Plaintiff completed a health care request form on April 23, 2008, because he was feeling

4  scared, depressed and sad due to the incident.

5    Plaintiff also requested medical attention on May 12, 2008, due to pain in his neck and

6  headaches.  Plaintiff states that he had a hard time sleeping and functioning, and couldn't stand the

7  pain anymore.

8  **III.      UNDISPUTED MATERIAL FACTS[4]**

9    Plaintiff was a state prisoner in the custody of the California Department of Corrections and

10  Rehabilitation ("CDCR") at all times relevant to the events at issue.

11    Defendants were employed by the CDCR at all relevant times.  Defendants Garcia and Goree

12  were Correctional Officers in the Transportation Unit, and Defendant Baptiste was a Correctional

13  Sergeant in the same unit.  During the event at issue, Defendants were transporting inmates from the

14  California Correctional Institution in Tehachapi, to various other prisons.

15    On March 12, 2008, Plaintiff was being transferred from Calipatria State Prison to KVSP.

16  Kern Valley State Prison.  Ex. A to Defendants' Statement of Undisputed Facts (Del Real-Sandoval

17  Decl., Ex. C).  Defendants were working this transport.  Ex. D to Defendants' Statement of

18  Undisputed Facts (Goree Decl. ¶ 3); Ex. E to Defendants' Statement of Undisputed Facts (Garcia

19  Decl. ¶ 3).  During the transport, Defendant Baptiste drove the bus.  Ex. F to Defendants' Statement

20  of Undisputed Facts (Baptiste's Responses to Interrogatories, Number 2).  Defendant Goree was

21  located towards the front of the bus next the inmate-seating area, which is approximately four feet

22  from the door of the bus.  Goree Decl. ¶ 4.

23    The transport made several stops along the route to drop prisoners off at various locations,

24  including Mesa Verde Community Correctional Facility ("MVCCF").  Goree Decl. ¶ 6; Garcia ¶ 4.

25  While being transported, all inmates classified as "sensitive needs" were placed on benches in the

26  front of the bus, with grating separating them from the general population inmates.  Goree Decl. ¶ 7;

27

28

---

[4] Only facts that are relevant to the Court's analysis will be set forth.

4

1    Garcia Decl. ¶ 5.  The general population inmates were placed on seats in the back of the bus.  Goree

2    Decl. ¶ 7; Garcia Decl. ¶ 5.

3           When the transport stopped at MVCCF, one of the general population inmates in the back of

4    the bus needed to disembark.  Goree Decl. ¶ 8; Garcia Decl. ¶ 6.  In order to take him off the bus, the

5    sensitive needs inmates had to be removed from the bus to avoid contact with the general population

6    inmates.  Goree Decl. ¶ 8; Garcia Decl. ¶ 6.

7           Plaintiff exited the bus because he was seated at the front of the bus.  ECF No. 146, at 43-45

8    (Pl.'s Decl.).

9           As the inmates were exiting the bus, Defendant Garcia stood at the bus door, directing the

10   sensitive needs inmates to the front of the bus.  Defendant Garcia also removed the shackles from the

11   inmates who were to remain at MVCCF.  Garcia Decl. ¶ 7.

12          When Plaintiff came back on the bus, he never told the transport team that he had been

13   subjected to any use of force by Defendant Garcia, or that he had any injuries.  Goree Decl. ¶ 12,

14   Garcia Decl. ¶ 10, Baptiste's Responses to Interrogatories, No. 7.

15          Upon his arrival at KVSP, Plaintiff was medically evaluated by medical staff.  No injuries

16   were noted, and Plaintiff did not complain of any injuries or indicate that he had been assaulted by

17   Defendant Garcia.  Plaintiff was asked if he had any "physical health care needs or current medical

18   complaints, including drug withdrawal symptoms."  Plaintiff stated, "no."  Del Real-Sandoval Decl.

19   at 2-3.

20          During his deposition, Plaintiff testified that his face stung "for a few seconds."  Ex. B to

21   Defendants' Statement of Undisputed Facts (Pl.'s Dep. 32:20-33:9).

22          On April 23, 2008, Plaintiff requested health care for mental health concerns.  On May 12,

23   2008, Plaintiff requested health care services for pain in his neck and headaches.  Pl.'s Decl. (ECF

24   No. 146, at 43-45).[5]

25

26

27

28   [5]  Defendants object to these statements, contending that they lacking foundation and are unsupported by admissible
     evidence.  Plaintiff testifies to his medical treatment in both his verified Second Amended Complaint and verified
     opposition, and his testimony about seeking medical treatment is certainly within his personal knowledge.

                                                          5

1    During his deposition, Plaintiff testified that he felt pain on the sides of his neck during the

2    incident, as well as "a shattering pain" on his face and neck.  He felt a sharp pain go down his neck

3    "for about a few seconds."  He did not feel anything crack.  Pl.'s Dep. 32:20-33:23.

4    Plaintiff also testified that he had pain in his neck and headaches before the incident resulting

5    from two automobile accidents.  Pl.'s Dep. 46:7-48:18.  The pain got progressively worse, even after

6    the incident with Garcia.  Medical officials have never determined that Plaintiff's problems were

7    caused by Defendant.  Pl.'s Dep. 48:6-49:8.

8    **IV.    DISCUSSION**[6]

9        A.    Excessive Force

10            1.    *Legal Standard*

11    The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments

12    Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992)

13    (citations omitted).  For claims arising out of the use of excessive physical force, the issue is

14    "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

15    sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per

16    curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705

17    F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is

18    contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation

19    marks and citation omitted), and although de minimis uses of force do not violate the Constitution,

20    the malicious and sadistic use of force to cause harm always violates contemporary standards of

21    decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130

22

23

---

[6]  Plaintiff includes negligence and due process claims in his motion for summary judgment, and Defendants include
24    claims regarding alleged threats and Plaintiff's property.  However, the screening order found only Eighth Amendment
claims, and the parties were on notice of the Court's findings.  While Plaintiff subsequently moved to amend, he did so
only to identify the Doe Defendants.  Accordingly, the parties cannot expand the claims on summary judgment and the
25    Court will not reach these issues.

26     The Court also notes that Plaintiff's negligence claim is not viable.  In his Second Amended Complaint, Plaintiff
characterizes the actions of Defendants Goree and Baptiste as negligent.  However, there is no evidence, or allegations,
that their omissions were the *proximate or legal cause* of any resulting injury. Hair v. State, 2 Cal. Rptr. 2nd 871, 875
27    (Cal. Ct. App. 1991) (citations omitted).  Moreover, the Second Amended Complaint did not allege compliance with the
Government Claims Act, which is prerequisite to filing a state law claim.  Shirk v. Vista Unified Sch. Dist., 42 Cal.4th
28    201, 208-09 (Cal. 2007).  Plaintiff first raised the exhaustion issue in his opposition, where he stated that he submitted a
claim on June 9, 2008.  However, although Plaintiff attached a copy of the claim as Exhibit T to his motion, there is no
explanation as to the final disposition of the claim.

6

1   S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d

2   623, 628 (9th Cir. 2002).

3                    2.       *Analysis*

4          Other than Defendant Garcia's general location at the stairs of the bus, there are few

5   undisputed facts about his alleged use of excessive force.

6          Defendant Garcia states that he does not recall anything usual occurring during the stop at

7   MVCCF.  He states that he never choked Plaintiff, nor did he slam or push him into the front of the

8   bus.  Garcia Decl. ¶¶ 8-9.

9          Plaintiff offers a very different version of events.  According to Plaintiff, as he exited the bus,

10  Defendant Garcia confronted him and said, "Do you want a piece of me?"  ECF No. 146, at 43-45.

11  Defendant Garcia then grabbed Plaintiff's neck, pulled him to the front of the bus and slammed his

12  face against the front of the bus.  ECF No. 146, at 43-45; ECF No. 146, at 49-50 (De La Riva Decl.).

13  Defendant Garcia continued to choke Plaintiff and told him get back on the bus.  ECF No. 146, at

14  43-45.  Plaintiff contends that he did nothing wrong.  ECF No. 146, at 43-45.

15         To the extent that Defendants object to Plaintiff's declaration, they do not fully explain their

16  objections.  Citing boilerplate relating to authentication and personal knowledge, Defendants simply

17  conclude that "the documents [Plaintiff] attaches to his motion are not authenticated and [Plaintiff]

18  has failed to lay a foundation, establish personal knowledge, or overcome hearsay objections."  Ds.'

19  Mtn, at 4.  At least as to Plaintiff's testimony of his interaction with Defendant Garcia, his testimony

20  is supported by both his verified Second Amended Complaint and his October 28, 2011, declaration

21  signed under penalty of perjury.  ECF No. 91, at 3; ECF No. 146, 43-47.  Jones v. Blanas, 393 F.3d

22  918, 922-23 (9th Cir. 2004).  His statements relating to his interaction with Defendant Garcia, made

23  under penalty of perjury, establish his personal knowledge and are properly before the Court.  Strong

24  v. Valdez Fine Foods, 724 F.3d 1042, 1045 (9th Cir. 2013) (although allegations based purely on

25  belief do not suffice, the personal knowledge threshold is particularly low at summary judgment

26  because all justifiable inferences must be drawn in favor of the nonmoving party).

27

28

1    Defendants' hearsay objection is also overruled, at least as to Plaintiff's testimony about

2  what Defendant Garcia said.  An opposing party's statement is not hearsay.  Fed. R. Evid.

3  801(d)(2)(A).[7]

4    Therefore, a dispute of material fact exists relating to Defendant Garcia's use of force.

5  Defendants contend that Plaintiff's allegations are not supported by the evidence, arguing that the

6  evidence does not show that he sustained any injuries as a result of the incident.  To support their

7  argument, they state that Plaintiff did not report the assault, or any injuries, to officers on the bus, or

8  to officials at KVSP upon his arrival.  Defendants also point to Plaintiff's deposition testimony that

9  he had pain "for a few seconds," and his testimony that he had neck pain and headaches prior to the

10  incident as a result of two prior car accidents.  These facts, however, do not, as Defendants seem to

11  suggest, make the use of force de minimis and outside the realm of an Eighth Amendment violation.

12  Viewing the disputed evidence in the light most favorable to Plaintiff, the Court cannot say that, as a

13  matter of law, the use of force was de minimis.  Moreover, the malicious and sadistic use of force to

14  cause harm always violates contemporary standards of decency, regardless of whether or not

15  significant injury is evident.  Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S.

16  at 9-10) (quotation marks omitted).

17    The Court also notes that Plaintiff continued to complain of neck pain and headaches after

18  the incident.  Even though Plaintiff admitted that medical personnel have not told him that such pain

19  was the result of the alleged incident, the Court cannot make such a determination without proper

20  medical evidence.

21    The Court therefore finds that summary judgment on the Eighth Amendment excessive force

22  claim in favor of Defendant Garcia should be denied.

23    B.    Failure to Protect

24       1.    *Legal Standard*

25    Prison officials have a duty under the Eighth Amendment to protect prisoners from violence

26  at the hands of other prisoners because being violently assaulted in prison is simply not part of the

27

28  [7] To the extent that Defendants object to the Declaration of Inmate De La Riva, the Court notes that his declaration is signed under the penalty of perjury.  Inmate De La Riva's testimony about what he saw is based on his personal knowledge and is admissible.  However, his statements about what he heard Defendant Garcia say are hearsay and Defendants' hearsay objection is sustained on that ground.

1   penalty that criminal offenders pay for their offenses against society.  Farmer, 511 U.S. at 833-34

2   (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune,

3   413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth

4   Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk

5   of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an

6   official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Farmer,

7   511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

8          The failure to intervene can support an excessive force claim where the bystander-officers

9   had a realistic opportunity to intervene but failed to do so.  Lolli v. County of Orange, 351 F.3d 410,

10   418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v.

11   Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995); see also Motley v. Parks, 383 F.3d 1058, 1071 (9th

12   Cir. 2004) (neither officers who participated in the harassing search nor officers who failed to

13   intervene and stop the harassing search were entitled to qualified immunity).

14          2.      *Analysis*

15          As with the claim against Defendant Garcia, many of the material facts related to whether

16   Defendants Goree and Baptiste failed to intervene in the alleged attack are disputed.  Defendants

17   Baptiste and Goree argue that they are entitled to summary judgment because they were not aware of

18   the attack, and therefore cannot be held responsible for failing to stop it.

19          Viewing the facts in the light most favorable to Plaintiff, the incident involving Defendant

20   Garcia was sufficiently serious to create a substantial risk of harm to Plaintiff.  The issue therefore

21   turns on whether Defendants Goree and Baptiste were aware of this risk, and given the parties'

22   differing evidence, a dispute of fact exists that precludes summary judgment.

23          Plaintiff alleged that Defendants Goree and Baptiste watched the attack but did not intervene.

24   In his declaration, he states that they were "present at the scene" and watched it, but failed to take

25   action.  ECF No. 146, at 45.  Inmate witness De La Riva also states that Defendants Baptiste and

26

27

28

1   Goree were "present at the scene," "on the side of the bus" taking restraints off other inmates.  ECF

2   No. 146 at 50).[8]

3       Defendants Goree and Baptiste, however, offer very different testimony.  Defendant Goree

4   states that he remained on the bus with the other inmates in accordance with policies and procedures,

5   and that from his position on the bus, he had no visual access to the sensitive needs inmates outside

6   of the bus.  Goree Decl. ¶¶ 9-10.  Similarly, Defendant Baptiste, who was driving the bus, states that

7   he did not see or hear an incident between Plaintiff and Defendant Garcia, and he has no knowledge

8   of Plaintiff being injured in any way during the transport.  Baptiste's Responses to Interrogatories,

9   Nos. 2, 6 and 7.

10      The Court cannot weigh the parties' conflicting evidence or make credibility determinations

11  on summary judgment, e.g., George, 752 F.3d at 1214, and Plaintiff's evidence suffices to create a

12  disputed issue of material fact as to whether Defendants Goree and Baptiste knowingly disregarded a

13  substantial risk of serious harm.  Summary judgment in their favor should be denied.

14  **V.      QUALIFIED IMMUNITY**

15      Defendants Goree and Baptiste contend that they are entitled to qualified immunity.

16      Qualified immunity shields government officials from civil damages unless their conduct

17  violates "clearly established statutory or constitutional rights of which a reasonable person would

18  have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  In ruling upon the

19  issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the

20  party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional

21  right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the

22  next step is to ask whether the right was clearly established.  Id.  In resolving these issues, the court

23

24

---

25  [8]  As noted previously, Defendants object generally to Plaintiff's declaration and Inmate De La Riva's declaration as
    failing to sufficiently lay a foundation for personal knowledge.  However, while their declarations are not overly
26  descriptive, they contain sufficient information for the Court to conclude that they had personal knowledge sufficient to
    testify about the locations and actions, or inactions, of Defendants Goree and Baptiste.  Strong, 724 F.3d at 1045.

27      Defendants also suggest that Plaintiff's testimony is contradicted by his deposition testimony, where he admitted that
    Defendants Goree and Baptiste were busy processing other inmates, and that his head was turned away from them for at
28  least part of the incident.  Defendants cite page 35 of Plaintiff's transcript, though this page is not attached to the
    excerpts provided to the Court.  In any event, his deposition testimony does not necessarily mean that he was *never* able
    to see Defendants Goree and Baptiste at some point during the attack.

1  must view the evidence in the light most favorable to plaintiff and resolve all material factual

2  disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

3          In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a

4  constitutional violation, and there exist triable issues of fact as to whether his rights were violated.

5  Therefore, the Court proceeds without further discussion to the second step of the inquiry.

6          "For a constitutional right to be clearly established, its contours must be sufficiently clear

7  that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer,

8  536 U.S. 730, 739, 122 S.Ct. 2508 (2002).  While the reasonableness inquiry may not be undertaken

9  as a broad, general proposition, neither is official action entitled to protection "unless the very action

10 in question has previously been held unlawful." Hope, 536 U. S. at 739. "Specificity only requires

11 that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th

12 Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates

13 established law even in novel factual circumstances," Hope, 536 U.S. at 741.

14         In 2008, it was well established that an officer's failure to intervene in an assault, where the

15 officer had knowledge of a serious risk of harm, violated the Eighth Amendment.  Assuming the facts in

16 the light most favorable to Plaintiff, no reasonable officer would have believed that watching an assault,

17 without intervening, was lawful conduct.

18         Accordingly, Defendants Goree and Baptiste are not entitled to qualified immunity.

19 **VI.    FINDINGS AND RECOMMENDATIONS**

20         For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants'

21 motion for summary judgment (Document 149) and Plaintiff's motions for summary judgment

22 (Documents 139 and 146) be DENIED.

23         These Findings and Recommendations will be submitted to the United States District Judge

24 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

25 days after being served with these Findings and Recommendations, the parties may file written

26 objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to

27 Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed

28 within fourteen (14) days from the date of service of the objections.  The parties are advised that

1    failure to file objections within the specified time may waive the right to appeal the District Court's

2    order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3

4    IT IS SO ORDERED.

5        Dated:    **December 14, 2015**                        /s/ *Dennis L. Beck*

6                                                      UNITED STATES MAGISTRATE JUDGE